PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BIANCA GARCIA, JOSE CHAVEZ, and DALLAS POTTISH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RENEWAL BY ANDERSEN LLC, a Minnesota entity d/b/a d/b/a RENEWALBYANDERSEN.COM,<br><br>Defendant. | Case No. 3:26-cv-02907-H-DDL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING AND INVASION OF PRIVACY** |

## I. NATURE OF ACTION

1. Defendant RENEWAL BY ANDERSEN LLC ("RENEWALBYANDERSEN.COM") bombards Californians with illegal spam disguised to trick recipients into mistakenly opening spam emails, clicking on the embedded links that take them to Defendant's website, and then secretly tracking them across the internet – even after Defendant explicitly promises that it will ***not*** do so.

2. There is something exceptionally vile about a scheme that uses false and misleading spam email that turns mistaken engagement into a gateway for ongoing surveillance. The initial fraud destroys any semblance of informed consent at the outset. That alone is actionable. But it is the second step that makes the conduct especially vile: once users are lured onto Defendant's website under false pretenses, Defendant promises that it will not track them, but secretly installs tracking pixels to harvest data, monitor behavior, and secretly follow the user across the internet without consent. That combination — intentional deception followed by invisible surveillance — makes the practice not just illegal, but truly insidious.

3. Both the spam and the secret surveillance are illegal under California law.[1]

## II. PARTIES, JURISDICTION AND VENUE

4. Plaintiff Bianca Garcia is and was at all times mentioned herein a citizen of the State of California. After receiving the spam attached hereto as **Exhibit "A"** and being deceived into clicking on the link embedded therein, she was directed to and visited Defendant's website at RENEWALBYANDERSEN.COM.

5. Plaintiff Jose Chavez is and was at all times mentioned herein a citizen of the State of California. After receiving the spam attached hereto as **Exhibit "B"** and

---

[1] *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id.* at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id.* at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."; and *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), aff'd, 2024 WL 123456 (9th Cir. 2024) (holding that the California Invasion of Privacy Act applies to internet conduct).

being deceived into clicking on the link embedded therein, he visited Defendant's website.

6. Plaintiff Dallas Pottish is and was at all times mentioned herein a citizen of the State of California. After receiving the spam attached hereto as **Exhibit "C"** and being deceived into clicking on the link embedded therein, she was directed to and visited Defendant's website at RENEWALBYANDERSEN.COM.

7. Defendant Renewal by Andersen is a Minnesota entity with its principal place of business in Minnesota. As such it is a Citizen of Minnesota for diversity purposes.

8. Defendant removed this case to federal court pursuant to the subject matter jurisdiction provision of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). Plaintiff does not dispute that this Court has jurisdiction over the original complaint or the First Amended Complaint because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because the plaintiff class includes citizens of all fifty states and Defendant is a citizen of Minnesota.

9. Personal jurisdiction over Defendant is reasonable because Defendant maintains an active, ongoing presence in California; advertised its services to plaintiffs and other California residents at https://www.renewalbyandersen.com/locations/san-diego-ca and https://bestwindowsanddoors.com/service-areas/san-diego-service-area/; because the e-mails at issued were directed to Plaintiffs in California; and because Defendant tracked Plaintiffs in California.

## III. FACTUAL ALLEGATIONS

10. Plaintiff Bianca Garcia is a California resident and citizen. She is the owner of the California e-mail address **biancamua28@yahoo.com.**

11. Plaintiff Jose Chavez is a California resident and citizen. He is the owner of the California e-mail address **jose.chavez22@yahoo.com.**

12. Plaintiff Dallas Pottish is a California resident and citizen. She is the owner of the California e-mail address **dallaspottish@aol.com.**

13. Plaintiff Garcia recently received a spam e-mail from Defendant. The spam had a forged header, spoofed domain, and deceptive subject line. The spam is attached hereto as **Exhibit "A".**

14. Plaintiff Chavez recently received a spam e-mail from Defendant. The spam had a forged header, spoofed domain, and deceptive subject line. The spam is attached hereto as **Exhibit "B".**

15. Plaintiff Pottish recently received a spam e-mail from Defendant. The spam had a forged header, spoofed domain, and deceptive subject line. The spam is attached hereto as **Exhibit "C"**.

16. The preceding are just three examples of the spam that Defendant sends to California consumers. Based on publicly available sources, it is believed that Defendant is responsible for over 100,000 spam e-mails to Californians every year.

17. The spams identified above are "Unsolicited Commercial e-mail advertisements" because plaintiffs had no pre-existing relationship with Defendant and because the e-mails were initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

18. None of the Plaintiffs have ever given "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents.

19. The above spam emails violate Bus. & Prof. Code § 17529.5(a)(1)-(2) because they (1) contain and are accompanied by third parties' domain names without the permission of the third parties, and (2) contain falsified, misrepresented, and forged header information that played a material part in tricking each plaintiff into engaging with the e-mails. Specifically:

a. Exhibit "A" purports to be sent from "Vocuria.com", which is a line of personal care devices associated with the brand Wokerui;

b. Exhibit "B" purports to be sent from Juritsu.com, which is a Jiritsu is an end-to-end crypto coin network; and

c. Exhibit "C" purports to be sent from eujxftdlb.us, which is a meaningless, randomly generated string of letters that does not identify any person, business, or brand and has no connection to Renewal by Andersen.

20. The above spam e-mails egregiously violate Bus. and Prof. Code § 17529.5(a)(3) because the subject lines would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message. Specifically:

a. The Subject line of Exhibit "A" **(“B□o□os□t□ □E□n□e□r□g□y□ □S□a□v□i□ng□s□ □w□i□th□ □A□n□d□e□r□s□e□n□'□s□ □W□i□n□d□o□w□s□-□G□e□t□ □Y□o□ur□ □Q□u□o□t□e□ □T□o□d□a□y□!�”)** falsely implies that a recipient who obtains Andersen windows will, in fact, realize increased energy savings. However, it is widely-accepted that most window replacement projects do not generate enough energy savings to recover their cost. The use of the phrase "Boost Energy Savings" is particularly deceptive because it promises a concrete economic benefit — a reduction in energy costs — without disclosing that such results are nonexistent for most people. A reasonable recipient would therefore be induced to open the e-mail and click on the link therein based on the expectation of meaningful energy-cost reductions that are illusory.

b. The subject line of Exhibit "B" **(“Jose Chavez, Don’t leave this offer on the table”)** falsely conveys that Defendant has made a specific offer to the recipient that is presently available, awaiting acceptance, and in danger of expiring if not promptly acted upon. In reality, the e-mail does not identify any actual offer, does not disclose its terms, does not establish that the recipient has been selected for any particular benefit, and does not provide any basis for believing that the recipient is entitled to receive anything of

value. Instead, the subject line employs personalization and artificial urgency to create the false impression that a valuable opportunity has already been extended to the recipient and that immediate action is required to avoid losing it. The misleading nature of the subject line is compounded by the fact that the recipient's name is inserted into the subject line, causing the message to appear individualized and specifically directed to the recipient when, in reality, it was part of a mass-marketing campaign sent to numerous consumers. A reasonable recipient would therefore conclude that Defendant had previously identified the recipient for a special promotion, discount, rebate, or other benefit that was already available and merely awaiting acceptance, which is false.

c. The subject line of Exhibit "C" **("LAST CALL: Your Window Upgrade STARTS NOW!")** — falsely conveys that the recipient has been presented with a specific, time-sensitive opportunity to upgrade his or her windows and that immediate action is required to avoid losing that opportunity. The phrase "LAST CALL" communicates that a deadline is imminent and that the recipient is receiving a final chance to take advantage of a particular offer. Likewise, the statement "Your Window Upgrade STARTS NOW!" suggests that the recipient has already qualified for, been approved for, or is otherwise entitled to begin a window-upgrade program immediately. In reality, there is no actual deadline; the subject line relies on artificial urgency and manufactured scarcity to induce recipients to open the e-mail under the mistaken belief that they are about to lose a valuable opportunity. A reasonable recipient would therefore conclude that a specific promotional program or discount was already available to him or her and was about to expire, when no such facts existed. Because the subject line misrepresents both the existence of a present opportunity and the urgency associated with

it, it is likely to mislead a reasonable recipient and therefore violates Bus. & Prof. Code § 17529.5(a)(3).

21. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiffs have in fact suffered concrete, particularized harm as a result of Defendant's conduct. Each Plaintiff spent valuable time and attention investigating the misleading offer; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage, and battery life.

22. The unauthorized domain name, misleading headers and literally false subject line also invaded each Plaintiff's privacy and disrupted the ordinary use and enjoyment of each Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

23. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements. In fact, Defendant actively defies California law.

24. Going from bad to worse, after luring each Plaintiff to its website at **RENEWALBYANDERSEN.COM** via the above misleading spam, Defendant explicitly promised each plaintiff that it would not track them if they rejected tracking, which each plaintiff did. Shockingly, even after promising not to, Defendant illegally installed numerous tracking pixels ("Tracking Pixels") on each Plaintiff's device that allow various data brokers **(including Neustar, TruOptik, Tapad, Distillery, Nielsen, LiveIntent)** to (1) intercept communications from each Plaintiff and track each Plaintiff across the internet and (2) use those communications to compile and sell deeply personal details about each Plaintiff to the highest bidders. Defendant does this to everyone who it lures to its site.

25. In short, Defendant has installed the Tracking Pixels to track signals generated by internet users (thus operating as a "Trap and Trace" device) to compile the dossiers described above and sell the information to the highest bidders. By doing so, Defendant has violated California Penal Code § 638.51.

26. The Tracking Pixels use algorithms to analyze internet and device data and predict whether two or more devices are owned by the same person. Participating websites and apps then cater their advertisements based on a collective knowledge of the user's actions across all of their devices. The Tracking Pixels use data such as cookie IDs, operating system IDs, IP addresses, online registrations, and data from partnering publishers to develop a probability that different devices are shared by the same person.

27. The Tracking Pixels are used for advertising to consumers across devices, where a user is shown an ad on their mobile or tablet device based on websites they visited on a desktop. For example, if an Android phone visits a website shortly after a desktop PC from the same home network, the Tracking Pixels will assess that there is a high probability that the two devices are operated by the same person and will show them similar ads on both devices. The Tracking Pixels also use cross-device analytics for things like location, timing, user behavior, and audience analysis.

28. The Tracking Pixels spyware activities described above are known as "fingerprinting." Put simply, the Tracking Pixels collect as much data as it can about otherwise anonymous visitors to Defendant's website and matches it with existing information that the Tracking Pixels have acquired and accumulated about hundreds of millions of Americans.

29. According to the esteemed Brennan Center for Justice, data brokers are "the main purveyors of surveillance capitalism" that "collect, assemble, and analyze personal information to create detailed profiles of individuals, which they then sell to "financial institutions and insurance firms…Advertising companies… predatory loan companies, stalkers, and scammers…foreign actors…and law enforcement and other government

agencies including the FBI and the IRS."). *See* https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole (last accessed June 2026).

## IV. CLASS ACTION ALLEGATIONS

30. Plaintiffs bring this action on behalf of all persons similarly situated and seek certification of the following class:

**All California citizens who:**

**(1) received any commercial e-mail promoting any of Defendant's products or services at a California e-mail address where such email(s) contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents; or**

**(2) visited RENEWALBYANDERSEN.COM while physically located in California and whose interactions, communications, or personally identifiable information were intercepted, collected, or transmitted to any data brokers through the use of tracking pixels, cookies, or similar technologies, without their knowledge or consent.**

31. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

32. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, but Plaintiffs believe that there are at least 100,000 members of the Class.

33. **Typicality.** Plaintiffs' claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

34. **Adequacy of Representation.** Each plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Each plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

35. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members;
b. Whether Defendant secretly tracked visitors to its website by installing pixels from data brokers.

36. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

37. **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

38. Each plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

39. As shown above, each spam violated one or more provisions of Section 17529.5.

40. Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

41. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

42. Plaintiffs and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

## SECOND CAUSE OF ACTION

## Violations of the California Trap and Trace Law

## Cal. Penal Code § 638.51

43. California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630, et. seq.

44. CIPA was enacted to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties." CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

45. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or

electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

46. California Penal Code § 638.51(a) provides that "a person may not install or use…a trap and trace device without first obtaining a court order.…"

47. Defendant uses multiple trap and trace process on the Website by deploying the Tracking Pixels on its Website because they capture routing, addressing and/or other signaling information of website visitors including Plaintiffs.

48. Defendant did not obtain consent from either Plaintiff or class members before using trap and trace technology to identify users of its Website and has violated section 638.51 and did not obtain a court order to do so.

49. CIPA imposes civil liability and statutory penalties for violations of section 638.51. Cal. Penal Code § 637.2.

**THIRD CAUSE OF ACTION**

**California Intrusion Upon Seclusion**

50. Defendant intentionally intruded upon the private affairs, concerns, and seclusion of each Plaintiff by improperly accessing each Plaintiff's personal information and using it for improper purposes, including by partnering with multiple data brokers to sell Plaintiff's and class members' private information to the highest bidder and them with behavioral advertising.

51. Defendant's intrusions upon the private affairs, concerns, and seclusion of each Plaintiff and class members has been substantial and would be highly offensive to a reasonable person and constitute an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of website visitors, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, and the penalties imposed by the FTC and other regulatory bodies. Defendant's conduct is especially egregious because Defendant expressly promised each plaintiff that it will not track them,

while secretly doing precisely the opposite. A reasonable consumer visiting Defendant's website after clicking on a link in an e-mail would expect that Defendant will honor its representations regarding privacy and data collection. Instead, after inducing consumers to trust those representations, Defendant secretly installs tracking pixels and similar surveillance technologies on visitors' devices. Those technologies enable Defendant and its advertising partners to monitor users' online behavior, track the websites they visit, collect information regarding their interests and activities, and build detailed profiles of their browsing habits. Such conduct violates well-established social norms because ordinary internet users do not expect that merely visiting a window-replacement website will result in their activities being monitored across unrelated websites and services throughout the internet.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiffs be designated as class representative, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

c. For statutory damages;

d. For punitive damages;

e. For attorneys' fees and costs as allowed by law; and

f. For any and all other relief at law or equity that may be appropriate.

Dated: June 16, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class